OPINION
{¶ 1} Appellant, Jimmie Ray Williams, appeals the May 22, 2001 judgment entry of the Ashtabula County Court of Common Pleas, in which appellant was found guilty of kidnapping and sentenced to a two-year prison term.
 {¶ 2} Appellant was indicted on July 6, 2000, with one county of kidnapping, a felony of the second degree, in violation of R.C.2905.01(A)(4). He was arraigned on July 11, 2000, and entered a plea of not guilty to the charge. A jury trial took place on February 6, 2001, and continued on February 7. Appellant was found guilty of kidnapping. On February 9, 2001, appellant filed a motion for a new trial asserting that the guilty verdict entered by the jury was not sustained by sufficient evidence and was contrary to law. The trial court denied his motion for a new trial on May 9, 2001, and on May 22, 2001, the trial court sentenced him to a term of two years in prison.
 {¶ 3} At the trial, Jamie Michelle Tupa ("Jamie") testified that on June 3, 2000, she was traveling east on Interstate 90 in Ashtabula County when her van broke down. She attempted to start the van a couple of times, but it did not start. She exited her auto and walked back toward Route 45. Appellant, who was operating a white truck, pulled over where Jamie was walking. He opened the passenger door and asked Jamie what was wrong. She proceeded to tell him that her van had broken down. He told her that "he'd take [her] to use the telephone." She got in the truck, and she and appellant conversed. According to Jamie, appellant asked her if she drank alcohol, to which she replied yes. Appellant also questioned Jamie as to sex. He asked her if she "was saving [herself] for [her] friend that [she] was talking about. And [she] said no, that [she] can't save [herself]." She told appellant that she had already had sex. Jamie tried to wean appellant off of the subject of sex because it seemed like a bad subject.
 {¶ 4} Appellant continued eastbound on Interstate 90 and took the Kingsville exit. After taking the exit, Jamie recalled seeing a truck stop and gas station on Route 84, but appellant continued straight instead of stopping. Appellant then pulled over on Route 84. Jamie related that there were no businesses around. He "asked [Jamie] to get on the bed in the back [of the truck]." Jamie stated that she "looked at him and couldn't even believe that he said it." She told him no "with a laughter in [her voice]," and he kept asking her. According to Jamie, the reason he wanted her in the back of his truck was because "he wanted to taste [her]." Jamie sat there in astonishment and could not believe it. Appellant then asked her again, and she said no. He proceeded to tell her that "[s]pit won't make [her] pregnant." Jamie revealed that the truck was stopped, but she did not try to get out because she "didn't know what [she] was doing at that point."
 {¶ 5} Appellant began driving again and mentioned to Jamie that he was "going to take [her] to his friends' house `cause they like little white girls." They arrived at the Bushnell Store where he told Jamie "he was going to go there but there wasn't enough room for his truck to get in." At that point, Jamie suggested that appellant just let her out, "but he said there was another place up the road." Appellant headed back toward Interstate 90, and reentered the freeway. As they were approaching the on-ramp, Jamie opened the door and told appellant that "if he didn't let [her] out, [she] was going to jump out." He responded that "if [she was] going to jump out, [he was] going to make it really hurt." She thought he was going to push her, so she proceeded to shut the door. Appellant locked the doors and drove on Interstate 90 into Pennsylvania. Jamie requested that appellant let her out of the truck, but appellant said "no" that he would let her out at the first rest area. When they arrived at the rest area, Jamie opened the door, grabbed her purse, and exited the truck. She used the telephone and called her mother.
 {¶ 6} Jamie testified that when she went to use the telephone she was "shaking really bad and [bawling] * * *." She told the man at the service desk, James Mark Reagan ("Mr. Reagan") what had occurred. Mr. Reagan related that when he saw Jamie, "she ha[d] tears in her eyes, and * * * was kind of upset and shaking." He explained that Jamie was shaking from head to toe. After speaking with Jamie, Mr. Reagan called 9-1-1. Trooper Chisholm arrived at the rest area, and Jamie told him what had occurred. He called the Pennsylvania barracks to look for appellant's vehicle. He was later notified that appellant's truck had been stopped. Trooper Chisholm took Jamie to where appellant's vehicle was detained, and she identified appellant and the truck. Jamie was taken to the police station where she gave her statement. Trooper Chisholm revealed that Jamie "was nervous, she was upset, [and] she was scared." Once her mother arrived at the station, she was released.
 {¶ 7} Jamie mentioned that while she was in appellant's truck, she noticed a CB radio. She also stated that while they were headed toward Pennsylvania, she noticed a cellular phone. However, she did not think there would be a point in using them since appellant would not let her out of the truck. Jamie further stated that she "started getting scared after [they] stopped * * * on [Route] 84."
 {¶ 8} At the close of the state's case, appellant moved for a Crim.R. 29 motion for acquittal, which was overruled. Thereafter, appellant testified in his own behalf.
 {¶ 9} Appellant related that on June 3, 2000, he was en route from Louisiana to New York to make a delivery with his truck as he is a truck driver. He indicated that he saw a "person * * * walking up the road, and then when she seen [him], she had flagged. And [he] seen her van smoking." Thereafter, he pulled over to see if he could assist Jamie. He asked Jamie if she needed a ride. He offered her use of his cellular phone because he "had the phone right there, and she told [him] no but he could give her a ride * * * to the mall." According to appellant, Jamie raised the topics of alcohol and sex. He informed her that he was Pentecostal and did not drink or swear. He further testified that he did not exit anywhere except the exit where he dropped Jamie off in Pennsylvania. He admitted that Jamie threatened to jump out, and he told her that she "didn't have to jump out * * * because [he said he had] done everything that [he knew] to do to offer [his] help and offer * * * the use of [his] facilities, to use the phone and all." He told her he would drop her off at the rest area.
 {¶ 10} Appellant denied threatening Jamie and saying that he wanted to taste her because he explained that he does not talk like that. After he dropped Jamie off, he continued his journey to New York. While en route to New York, he was stopped. He mentioned that when he got out of his truck, the officers had their guns drawn. Appellant explained that when he picked up Jamie, he "was just trying to be helpful and give her [a] safe haven where she could get that help because she needed it. * * * That was the only thing [he] had in mind." At the close of appellant's case-in-chief, appellant moved for an acquittal, which the trial court overruled.
 {¶ 11} During deliberations, the jury had four questions. First, they wanted to know whether appellant had a previous record of criminal offenses. Second, they asked whether the company for which appellant worked had global positioning satellites to record where the truck had been. Third, they wanted to know whether the truck doors locked automatically when the truck was in motion. Lastly, they requested the testimony of Jamie and appellant as to when and how the doors of the truck were locked. The trial judge stated that the questions dealt with "evidentiary matters * * * [and] the evidence portion of the trial [was] closed. No additional evidence matters may be submitted in the form of question and answers. You must decide this case upon the evidence submitted at trial. The Court may not at this time repeat the testimony that was presented during the trial." Following their deliberations, the jury returned a guilty verdict. Appellant timely filed the instant appeal and now assigns the following as error:
 {¶ 12} "[1.] The trial court erred to the prejudice of appellant, when the state failed to prove beyond a reasonable doubt the element of venue.
 {¶ 13} "[2.] The trial court erred to the prejudice of appellant, when it denied [appellant's] motions for judgment of acquittal, the jury found appellant guilty of kidnapping, and denied appellant's motion for a new trial all of which was not supported by sufficient evidence, was against the manifest weight of the evidence or contrary to law.
 {¶ 14} "[3.] The trial court abused its discretion and erred to the prejudice of appellant by inadequately answering or refusing to answer the jury's questions regarding the evidence and jury instructions on the law.
 {¶ 15} "[4.] Appellant received ineffective assistance of counsel which unduly prejudiced appellant and was contrary to law."
 {¶ 16} Under the first assignment of error, appellant alleges that the state failed to prove beyond a reasonable doubt the element of venue.
 {¶ 17} In a criminal prosecution, the state must prove venue at trial unless it is waived by the defendant. State v. Draggo (1981),65 Ohio St.2d 88, 90. Waiver occurs if the defense does not properly object by the conclusion of the trial to the state's failure to prove venue. Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 WL 286594, at 4. However, venue is not a material element of any criminal offense; instead, venue and the elements of the offense charged are separate and distinct. Id. The prosecution does not need to prove venue in express terms so long as it is established by all the facts and circumstances in the case. State v. Headley (1983), 6 Ohio St.3d 475,477. In addition, the right to assert that the state did not prove venue cannot be advanced for the first time on appeal. Simpson, supra, at 4, citing State v. Loucks (1971), 28 Ohio App.2d 77, 78.
 {¶ 18} In the instant matter, appellant waived the ability to object to an alleged failure by the state to prove venue because he raised the issue only after the trial was concluded. Thus, even if appellant sought to initiate an objection on the basis that the state had failed to prove proper venue, the time to raise it had clearly expired after the defense had rested. Therefore, it cannot be raised for the first time on appeal.
 {¶ 19} Furthermore, even if appellant was not barred from raising the venue issue for the first time on appeal, it is our view that the state presented ample evidence regarding the issue of venue. Jamie testified that her van broke down in Ashtabula County, and appellant picked her up there. The trooper that found Jamie's van stated that it was found in Ashtabula County. Further, Kingsville, where Jamie said appellant stopped, is also located in Ashtabula County. Hence, it is our view that there was adequate evidence to establish proper venue. Appellant's first assignment of error lacks merit.
 {¶ 20} For his second assignment of error, appellant claims that the trial court erred when it denied appellant's motion for judgment of acquittal, erred when the jury found appellant guilty of kidnapping, and erred when it denied appellant's motion for a new trial because it was not supported by sufficient evidence and was against the manifest weight of the evidence.
 {¶ 21} The Supreme Court of Ohio established the test for determining whether a motion for acquittal is properly denied in Statev. Bridgeman (1978), 55 Ohio St.2d 261, syllabus, which states that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 22} Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state. As this court stated in State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, 1994 WL 738452, at 4-5:
 {¶ 23} "`"(* * *) (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. * * *"'
 {¶ 24} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' * * *." (Emphasis sic.) (Citations omitted.)
 {¶ 25} An appellate court must look to the evidence presented to determine if the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt. State v. March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 WL 535675, at 3. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Furthermore, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 26} Applying this standard to the matter at hand, the state was required to present sufficient evidence to establish that appellant committed the offense of kidnapping pursuant to R.C. 2905.01(A)(4), which states that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will * * *."
 {¶ 27} Hence, the state needed to present sufficient evidence that appellant by force, threat, or deception, knowingly removed Jamie or restrained her of her liberty for the purpose of engaging in sexual activity. R.C. 2905.01.
 {¶ 28} In the case at hand, the state presented evidence that even though Jamie voluntarily entered appellant's truck, appellant told her he would take her to use the telephone. She was told this despite the fact that appellant had a C.B. and cellular phone in his truck. After they passed an exit with a truck stop, appellant did not pull over and continued going straight. Yet, appellant testified that he asked Jamie if she wanted to use his cellular phone and needed a ride. Even if his testimony was believed, appellant could have called for help for Jamie.
 {¶ 29} There was also testimony from Jamie that appellant refused to stop the truck and let her out on numerous occasions. Further, she explained that she did not jump out of the truck because appellant told her he would make it hurt if she chose to jump. Thereafter, appellant locked the doors in the truck. Therefore, based on the conversations that took place in the truck, and the comment appellant made about wanting to taste Jamie, it is our position that the evidence supports a factual conclusion that Jamie was restrained by deception despite her plea to be let out of the truck. From this evidence, the jury could reasonably conclude appellant transported Jamie from the place in which he found her and restrained her for the purpose of engaging in a sexual activity. The record provided sufficient evidence presented at trial to demonstrate that appellant committed a kidnapping.
 {¶ 30} Appellant also argues that the verdict was against the manifest weight of the evidence. Though the evidence may have been sufficient to sustain a guilty verdict, the issue of manifest weight requires a different type of analysis. Schlee, supra, at 5. When addressing whether a verdict is against the manifest weight of the evidence, a reviewing court examines "`the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *'" State v. Davis (1988), 49 Ohio App.3d 109,113.
 {¶ 31} A judgment of the trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 32} Here, appellant was convicted of kidnapping, which the state proved. It is within the discretion of the trier of fact to determine the credibility of witnesses and the weight to be given to their testimony. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The jury must have found the state's witnesses to be more credible. We conclude, after reviewing the record and weighing the evidence and all reasonable inferences, that the judgment of the trial court was supported by competent, credible evidence. Likewise, after an examination of the entire record, it is our view that there was no manifest miscarriage of justice requiring the conviction to be reversed. Appellant's second assignment of error is not well-founded.
 {¶ 33} In the third assignment of error, appellant posits that the trial court erred by inadequately answering or refusing to answer the jury's questions regarding the evidence and jury instructions on the law.
 {¶ 34} As to the allegation that the court's handling of the jury's questions denied him a fair trial, appellant did not object to the court's handling of those questions before the jury was sent back for further deliberations. Accordingly, the court's treatment of the questions must rise to the level of plain error to merit a new trial. Plain error does not exist unless, but for the error, the outcome of the trial would have been different. Crim.R. 52; State v. Long (1978),53 Ohio St.2d 91, 96-97. While the jury did return with a guilty verdict, it is our determination that this was not sufficient evidence of prejudice.
 {¶ 35} Additionally, "[w]here, during the course of its deliberations, a jury requests further instruction, or clarification of instructions previously given, a trial court has discretion to determine its response to that request." State v. Carter (1995), 72 Ohio St.3d 545, paragraph one of the syllabus; see, also, State v. Kirin (Aug. 11, 2000), 11th Dist. No. 99-T-0054, 2000 WL 1140261, at 3. Indeed, a reversal of a criminal conviction, based upon a trial court's response to such a request from the jury, requires a showing that the lower court committed an abuse of discretion. Carter, 72 Ohio St.3d at 553. This court has also held that a trial court has no duty to provide a jury with requested transcripts. See, generally, State v. Brown (Mar. 31, 2000), 11th Dist. Nos. 95-T-5349 and 98-T-0061, 2000 WL 522339, at 4.
 {¶ 36} The state presented substantial evidence of appellant's guilt, particularly in the form of the witnesses that testified as to Jamie's state of mind after the incident occurred. Thus, any error committed in the court's response to the jury's question was harmless beyond a reasonable doubt. The court's responses to the jury's questions were appropriate as the court concluded that no additional evidence could be presented to the jury in response to three of the four questions. Appellant has not demonstrated that the response to the jury questions was prejudicial. Hence, there was no abuse of discretion. Appellant was provided a fair trial, and as a result, it is our position that the trial court did not err in overruling his motion for a new trial. Appellant's third assignment of error is meritless.
 {¶ 37} For his fourth assignment of error, appellant contends that he received ineffective assistance of counsel, which was unduly prejudicial to him.
 {¶ 38} To warrant a reversal on the grounds that an appellant was not provided with effective assistance of counsel, an appellant bears the burden of meeting the two-prong test set forth in Strickland v.Washington (1984), 466 U.S. 668, 687, which states that:
 {¶ 39} "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."
 {¶ 40} To determine if an attorney's performance was deficient, the appellate court must inquire whether the attorney provided "reasonably effective assistance, considering all of the circumstances."State v. Loza (1994), 71 Ohio St.3d 61, 83, citing Strickland. "A Sixth Amendment violation does not occur `unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.'" State v. Goodwin (1999), 84 Ohio St.3d 331,334, quoting State v. Bradley (1989), 42 Ohio St.3d 136, 142. A properly licensed attorney is presumed competent and judicial scrutiny of his performance must be highly deferential. Strickland, 466 U.S. at 689. An attorney's strategic decisions and trial tactics will not support a claim of ineffective assistance. State v. Clayton (1980), 62 Ohio St.2d 45,48-49.
 {¶ 41} Under the second prong of the Strickland test, appellant must show he was prejudiced. To establish prejudice, appellant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."Bradley, 42 Ohio St.3d at paragraph three of the syllabus; see, also,State v. Stojetz (1999), 84 Ohio St.3d 452, 457. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Bays (1999), 87 Ohio St.3d 15, 27. See, also, Statev. Brant (Aug. 4, 2000), 11th Dist. No. 99-P-0037, 2000 WL 1114845, at 9.
 {¶ 42} In the case at bar, appellant claims his trial counsel failed to object to the trial court's response to the jury's deliberation questions, and he was prejudiced as a result. However, appellant has not established that his counsel's performance in failing to object to the trial court's answer to the jury's questions was deficient. In addition, even if his counsel's performance was deficient, he did not prove that the outcome of the trial would have been different. Appellant also did not show that he was prejudiced in any way. Our review of the record does not disclose any conduct that violated appellant's Sixth Amendment right to effective assistance of counsel. Consequently, counsel's performance did not fall below the objective standard of reasonableness. Further, most of appellant's arguments in this assignment of error are predicated on issues that were raised in the third assignment of error. Since we concluded that there was no error in the third assignment of error, appellant's fourth assignment of error is also overruled.
 {¶ 43} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Ashtabula County Court of Common Pleas is affirmed.
WILLIAM M. O'NEILL, P.J., DIANE V. GRENDELL, J., concur.